Brian L. Greben, Esq.
LAW OFFICE OF BRIAN L. GREBEN
316 Great Neck Road
Great Neck, NY 11021
(516) 304-5357

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FRANK RAFTER JR., THOMAS KELLY, and
SEFU SIMMS, on behalf of themselves and others                    **CASE NO:**
similarly situated,

     Plaintiffs,                        **COLLECTIVE ACTION AND**
           **<u>CLASS ACTION COMPLAINT</u>**

      -against-

EVERLAST SIGN & SERVICE INC.,
ANN TIEFENWORTH, ALEXA TIEFENWORTH,
LISA PIAONE, FRANK PIAONE, and
ARTHUR FLYNN,

       Defendants.
------------------------------------------------------------------X

  Plaintiffs, on behalf of themselves and all others similarly situated, allege as follows:

  1. Plaintiffs, on behalf of themselves and all others similarly situated, bring this lawsuit seeking recovery against Defendants for Defendants' violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA").

  2. Plaintiffs, on behalf of themselves and all others similarly situated, further bring this lawsuit seeking recovery against Defendants for Defendants' violations of the New York Labor Law, Art. 6, § 190 *et. seq*., and Art. 19, § 650 *et. seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. § 142 (collectively "NYLL").

  3. This lawsuit seeks to recover unpaid overtime compensation, spread-of-hours pay, unreimbursed milage and maintenance expenses, liquidated damages, and statutory penalties for plaintiffs and their similarly situated co-workers – i.e. defendants' staff, including, but not limited to, other sign-erectors - who work or have worked at Everlast Sign & Service Inc. a

company specializing in, *inter alia,* the delivery, installation, maintenance, and removal of real estate signage.

4.      Plaintiffs retained the Law Office of Brian L. Greben to represent Plaintiffs, FLSA Collective Plaintiffs and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

5.      Plaintiffs' consent to sue forms are attached hereto, respectively, as Exhibits "A," "B," and "C."

## JURISDICTION AND VENUE

6.      The Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the FLSA.  The Court has supplemental jurisdiction over the New York state law claims, as they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

7.      Venue is proper in the district because the parties reside in the district, Defendants conduct business in the district, and the acts and/or omissions giving rise to the claims herein alleged took place in the district.

## THE PARTIES

8.      Plaintiff Frank Rafter Jr. is a resident of North Lindenhurst, New York.

9.      Plaintiff Thomas Kelly is a resident of Bayshore, New York.

10.     Plaintiff Sefu Simms is currently a resident of Snellville, Georgia, and was a resident of Westbury, New York, while working for Defendants.

11.     Defendant Everlast Sign & Service Inc. ("Everlast") is a domestic business corporation organized under the laws of New York, with a principal place of business at 233 Robbins Ln., No. 5, Syosset, New York  11791.

12.     Defendants Ann Tiefenworth and Alexa Tiefenworth are the principals and

owners of Everlast.

13.    Defendants Lisa Piaone and Frank Piaone are Everlast's office managers.

14.    Defendant Arthur Flynn is Everlast's warehouse manager.

15.    Everlast has an annual gross volume of sales in excess of $500,000.00.

16.    At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.

17.    Defendants Ann Tiefenworth, Alexa Tiefenworth, Lisa Piaone, Frank Piaone, and Arthur Flynn (collectively, "Individual Defendants") exercised control over the terms and conditions of the employment of Plaintiffs, FLSA Collective Plaintiffs and Class Members.

18.    Individual Defendants have the authority to hire and fire employees, and are in charge of budgeting issues, including payroll.

19.    Individual Defendants exercise control over Everlast's day to day operations, and are actively involved in managing its operations.

20.    To the extent Defendants retained employment records, Individual Defendants exercised control over those records.

21.    Individual Defendants are the former and current employers of Plaintiff and those similarly situated under the FLSA and the NYLL.

22.    All Defendants are hereinafter collectively referred to as "Defendants."

## FLSA COLLECTIVE ACTION ALLEGATIONS

23.    Plaintiffs bring and seeks to prosecute their FLSA claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 207, and 29 U.S.C. § 216(b), on behalf of all non-exempt persons currently or formerly employed by Defendants, including all employees who were employed by Defendants for manual positions including, but not limited to, sign deliverers, sign erectors, sign removers, and sign maintainers, and any other similarly situated current and

former employees holding comparable positions ("FLSA collective Plaintiffs"), at any time on or after the date that is three years before the filing of the Complaint in this case as defined herein (the "Collective Action Period").

24.     At all relevant times, Plaintiffs and the FLSA collective plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decisions, policies, plans and common policies, programs, practices, procedures, protocols, routines, and rules, including willfully failing and refusing to pay class members one-and-one-half times their regular hourly rate for work in excess of forty (40) hours per workweek for work they provided thereafter.  The claims of Plaintiffs are essentially the same as those of the FLSA Collective Plaintiffs.

25.     The FLSA Claims for Relief are properly brought under and maintained as an opt-in collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 207, and 29 U.S.C. § 216(b).

26.     The FLSA Collective Plaintiffs are readily ascertainable. For purpose of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

27.     Plaintiffs bring New York State law Claims for Relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt persons employed by Defendants, including all non-exempt persons currently or formerly employed by Defendants, including all employees who were employed by defendants for manual positions including, but not limited to, sign deliverers, sign erectors, sign removers, and sign maintainers, and any other similarly situated current and former employees holding comparable positions, on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

28.     All said persons, including Plaintiffs, are referred to herein as the "Class." The class members are readily ascertainable. The number and identity of the class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P. 23.

29.     The proposed Class is so numerous that joinder of all class members is impracticable, and the disposition of their claims as a Class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than fifty (50) Members of the Class.

30.     Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the class members were subject to the same corporate practices of Defendants, as alleged herein, including willfully failing and refusing to pay class members one-and-one-half times their regular hourly rate for work in excess of forty (40) hours per workweek for work they provided thereafter.  Defendants' company-wide policies and practices affected all class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

31.     Plaintiffs are able to protect the interests of the Class fairly and adequately, and have no interests antagonistic to the Class.  Plaintiffs are represented by an attorney who is experienced and competent in both Class Action litigation and employment litigation and has previously represented both plaintiffs and defendants in wage and hour cases.

32.     A Class Action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendants. Class Action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual class members are small in the sense pertinent to a Class Action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a Class Action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a Class Action would result in a significant saving of these costs. The prosecution of separate actions by individual Members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual Members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, Class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a Class Action.

33.     Upon information and belief, Defendants and other employers throughout the State violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class Actions provide class members who are not named in the complaint a degree

of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

34.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a)     Whether Defendants properly compensated Plaintiff and class members for overtime by paying them overtime pay for the hours worked in excess of forty (40) hours per workweek within the meaning of New York Labor Law, Art. 6, § 190 *et. seq.*, and Art. 19, § 650 *et. seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. § 142;

(b)     Whether Defendants paid employees New York's "spread of hours" premium when their workdays exceeded 10 hours;

(c)     Whether Defendants properly compensated Plaintiff and class members for the costs of tools of the trade;

(d)     The nature and extent of the class-wide injury and the appropriate measure of damages for the Class;

(e)     Whether Defendants can prove that their unlawful policies were implemented in good faith; and

(f)     Whether Defendants failed to provide Plaintiffs and the Class the requisite wage notices and other documents required under the NYLL.

## FACTS

35.     As noted above, Everlast is in the business of erecting "for sale" and similar real estate signage for, inter alia, real property on Long Island.  At all relevant times, it has been owned and operated by defendants Ann Tiefenworth and Alexa Tiefenworth, and managed by defendants Lisa Piaone, Frank Piaone, and Arthur Flynn.

**A. Plaintiff Frank Rafter Jr.**

36.     Everlast hired Mr. Rafter during Everlast's 2004-05 season, and he continued working for Everlast until December 2020. From at least Spring 2015 through the beginning of the Covid-19 pandemic in March 2020, Mr. Rafter worked the same schedule, which varied slightly by the seasons.

    i.    Mid-December through Mid-March

37.     From mid-December through mid-March, Mr. Rafter began every day from Monday through Friday at 5:00 a.m., when he arrived at Everlast's warehouse, unloaded (and sometimes repaired or modified) the signs and posts he had removed from properties during his previous workday, and picked up the materials for his daily assignments (i.e., signs and signposts).  He then travelled to each property that Everlast sent him and erected signs, as per his instructions.  He typically finished installation between 1:00 p.m. and 2:00 p.m.

38.     Thereafter, he returned home and spent approximately one hour on the telephone with Everlast's customers discussing any problems that arose over the course of the day, such as instructions that were unclear or could not be followed, needed equipment or materials, etc.  He finished this telephone work between 2:00 p.m. and 3:00 p.m., then returned to the warehouse at 5:15 p.m. and picked up his instructions for the following day.

39.     From Monday through Thursday, and again on Sunday, he spent an additional two hours planning the next workday's route.  Mr. Rafter worked an average of 57.5 hours per week for Everlast during this part of the year.

    ii.   Mid- March through Mid- December

40.     From mid-March through mid-December (i.e., the majority of the year), Mr. Rafter began his day at the same time and in the same manner as he did during the other months of the year, but did not finish his daily telephone calls until between 3:30 and 4:30 p.m.  Mr. Rafter travelled to the warehouse for the next day's assignment at 5:15 p.m. (as he did during the slower season) and planned the next workday's route.  Accordingly, Mr. Rafter worked 65 hours

per week during Everlast's busier season.

40.    From 2014 through 2018, defendants paid Mr. Rafter $1,000.00 per week; from 2018 through 2020, they paid him $1,050.00 per week.

41.    From March 16, 2020 through May 31, 2020, Everlast reduced Mr. Rafter's workload because of the pandemic.  During this period Mr. Rafter worked three days per week for a total 40.5 hours, for which defendants paid him $630 per week.

42.    From June 1, 2020, through December 2020, Mr. Rafter resumed his 67.5 hour per week schedule, and Everlast resumed paying him $1,050.00 per week.

43.    Mr. Rafter drove at least 125 miles per day for Everlast during the busier part of the year, 80 miles per day during the slower part of the year, and 60 miles per day during the pandemic slowdown in early 2020.  Defendants never reimbursed him for the fuel he purchased or the substantial maintenance expenses he incurred.

**B. Plaintiff Thomas Kelly**

44.    Everlast hired Thomas Kelly in March 2013.  Mr. Kelly's job duties differed slightly from Mr. Rafter's in that Mr. Kelly did not speak with customers on the telephone and his schedule was consistent throughout the entire year.  Moreover, there were no breaks in his schedule comparable to Mr. Rafter's.

45.    Mr. Kelly worked Mondays through Fridays.  His daily work routine began around 5:30 a.m., when he arrived at the Everlast warehouse to unload the signs and posts he had removed from properties during his previous workday, and to make necessary modifications and/or repairs to posts (such inserting O-ring screws into new posts).  The warehouse doors opened around 6:30 a.m., at which time Mr. Kelly would map his daily route using the company computer and made sure he had the proper materials for his drive.

46.    Mr. Kelly typically left the warehouse and began his route around 9:00 a.m.  He worked straight through the day until completing his assignments between 5:00 and 7:00 p.m.

Accordingly, Mr. Kelly worked an average of 62.5 hours per week.

47.    Mr. Kelly worked the above schedule every week from his hiring until approximately January 2017, when he was forced to take a two month break from work due to a foot injury.  He returned to Everlast in March 2017, but had to take more time off between April and September of that year due to ongoing medical complications.  Mr. Kelly returned again to Everlast in October 2017, and continued working his previous schedule until May 2019.

48.    Defendants paid Mr. Kelly $1,050 per week.

49.    Mr. Kelly drove at least 125 miles per day for defendants throughout the entirety of his tenure with Everlast.  Defendants never reimbursed him for the fuel he purchased or the substantial maintenance expenses he incurred.

### C.  Plaintiff Sefu Simms

50.    Sefu Simms worked for Defendants from August 2019 through the beginning of the pandemic in March 2020.   Mr. Simms worked Monday through Fridays.  Each workday, he arrived at defendants' office between 6:15 a.m. and 6:30 a.m. to plan his day's route using defendants' computer, unload his previous workday's signs and posts, pick up the new day's signs and posts, and make any necessary repairs or alterations.

51.    Mr. Simms typically left defendants' facilities to begin his route between 7:30 a.m. and 7:45 a.m.  From the beginning of his employment in August 2019 through the end of October 2019, he finished his route at 7:30 p.m.; from November 19, 2019, through the end of his employment with Defendants in March 2020, he completed his routes at 6:00 p.m. Accordingly, Mr. Simms worked an average of 66.25 hours per week from August 2019 through October 2019, and 58.75 hours per week from November 2019 through March 2020.

52.    Defendants paid Mr. Simms $1,000 per week.

53.    Mr. Simms drove at least 100 miles per day for Everlast during the busier part of the year and 90 miles per day during the slower part of the year.  Defendants never reimbursed

him for the fuel he purchased or the substantial maintenance expenses he incurred.  These

maintenance expenses included, but were not limited to, replacement of his car's transmission.

### D. Facts Common to all Plaintiffs

54.     At all relevant times, Plaintiffs, FLSA Collective Plaintiffs, and Class Members'

employment at Everlast has been under the direct oversight of the Individual Defendants, who

were and remain the owners and managers of Everlast.

55.     At all relevant times, Individual Defendants had total operational control over

Everlast.

56.     Individual Defendants were in charge of all hiring/firing.  If employees wanted a

raise or a change in schedule, they would seek approval from Individual Defendants.

57.     Individual Defendants implemented and set the wage and hour policy of Everlast,

and would reprimand staff if they did not do their work properly.

58.     Plaintiffs, FLSA Collective Plaintiffs, and Class Members' job duties do not

include hiring, firing, scheduling or disciplining of employees. Plaintiffs, FLSA Collective

Plaintiffs, and Class Members do not set pay schedules of employees. Rather, their job duties are

similar to those duties of non-exempt hourly employees in that their duties are void of

meaningful independent discretion with respect to the exercise of their duties.

59.     Defendants have never paid Plaintiffs, FLSA Collective Plaintiffs, and Class

Members an overtime rate of 1.5 times their regular hourly rate for hours worked after having

already worked 40 hours per week, as they were required to do under the FLSA and the NYLL.

60.     Defendants knowingly and willfully operated their business with a policy of not

paying an overtime at a rate of 1.5 times each employee's regular hourly rate to Plaintiffs, FLSA

Collective Plaintiffs, and Class Members.

61.     Defendants have consistently suffered, permitted and/or instructed Plaintiffs,

FLSA Collective Plaintiffs, and Class Members to work over 10 hours per day.  Defendants have

not paid Plaintiffs, FLSA Collective Plaintiffs, and Class Members one additional hour of pay at the basic minimum hourly rate for all of the times that the length of the interval between the beginning and end of their workday – including working time plus time off for meals plus intervals off duty – was greater than 10 hours.

62.     Defendants knowingly and willfully operated, and continue to operate, their business with a policy of not compensating/reimbursing the individuals whom they employee for the delivery, installation, maintenance, and removal of real estate signage for costs of tools of the trade. Specifically, these employees used their own cars for delivery, installation, maintenance, and removal of signage, and also paid for the gas and maintenance, with no reimbursement from Defendants. Defendants' failure to reimburse Plaintiffs for their costs of tools of the trade violates the FLSA and NYLL

63.     Defendants have not kept accurate records of wages earned or of hours worked by Plaintiffs, FLSA Collective Plaintiffs and Class Members.

64.     Defendants have not furnished accurate records of wages earned or of hours worked by Plaintiffs, FLSA Collective Plaintiffs and Class Members.

65.     Defendants have failed to furnish Plaintiffs, FLSA Collective Plaintiffs and Class Members with accurate statements of wages, hours worked, rates paid, and gross wages.

66.     Defendants have failed to provide proper wage notices at the beginning of employment of Plaintiffs, FLSA Collective Plaintiffs and Class Members, and annually thereafter.

## FIRST CLAIM FOR RELIEF

(FLSA Overtime Violations, 29 U.S.C. § 201, *et seq*. Brought by Plaintiffs
on Behalf of Themselves, the FLSA Collective Plaintiffs and Class Members)

67.     Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs and Class Members, reallege and incorporate by reference all previous paragraphs.

68.     Throughout the statute of limitations period covered by these claims, Plaintiffs, FLSA Collective Plaintiffs and Class Members regularly worked in excess of forty (40) hours per workweek and continue to do so.

69.     At all relevant times, Defendants operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay Plaintiffs, FLSA Collective Plaintiffs and Class Members at one-and-one-half times their regular hourly rates for work in excess of forty (40) hours per workweek, even though Plaintiff, the FLSA Collective Plaintiffs and Class Members have been and are entitled to overtime.

70.     At all relevant times, Defendants willfully, regularly and repeatedly failed to pay Plaintiffs, FLSA Collective Plaintiffs and Class Members at the required overtime rates, one-and-one-half times their regular rates for hours worked in excess of forty (40) hours per workweek.

71.     Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs and Class Members, seeks damages in the amount of their respective unpaid overtime compensation, liquidated damages as provided by the FLSA for overtime violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF

(New York Overtime Violations,
New York Labor Law § 650 *et seq*.,
N.Y.C.C.R. § 142 *et seq*., Brought by Plaintiffs on Behalf of
Themselves, the FLSA Collective Plaintiffs and Class Members)

72.     Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs and Class Members, reallege and incorporate by reference all previous paragraphs.

73.     At all times relevant to this action, Plaintiffs, FLSA Collective Plaintiffs and

Class Members were employees and Defendants were employers within the meaning of NYLL.

74.     The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants.

75.     It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime wages for all hours worked in excess of forty (40) hours in any workweek.

76.     Throughout the class period, Defendants willfully, regularly and repeatedly failed to pay Plaintiffs, FLSA Collective Plaintiffs and Class Members at the required overtime rates, one-and-one-half times their regular rates for hours worked in excess of forty (40) hours per workweek.

77.     By failing to pay Plaintiffs, FLSA Collective Plaintiffs and Class Members overtime wages for all hours worked in excess of 40 hours per week, they have willfully violated NYLL Article 19, § 650 *et seq.*, and the supporting New York State Department of Labor Regulations, including, *inter alia*, the regulations in 12 N.Y.C.R.R., Parts 142.

78.     As a result of Defendants' willful and unlawful conduct, Plaintiffs, FLSA Collective Plaintiffs and Class Members are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

### THIRD CLAIM FOR RELIEF

(New York Violations, NYLL §§ 195, 198 (1-b) *et seq.*)

79.     Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs and Class Members, reallege and incorporate by reference all previous paragraphs.

80.     Defendants have willfully failed to supply Plaintiffs, FLSA Collective Plaintiffs and Class Members with wage notices, as required by NYLL, Article 6, § 195(1), containing their rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary,

piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

81.    Through their knowing and intentional failure to provide Plaintiffs and the FLSA Collective Plaintiffs and Class Members with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq*., and the supporting New York State Department of Labor Regulations.

82.    Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiffs and the FLSA Collective Plaintiffs and Class Members are entitled to statutory penalties for Defendants' failure to provide them with wage notices, plus, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b).

## FOURTH CLAIM FOR RELIEF

(New York Violations, NYLL §§ 195, 198 (1-d) *et seq*.)

83.    Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs and Class Members, reallege and incorporate by reference all previous paragraphs.

84.    Defendants have willfully failed to supply Plaintiffs and the FLSA Collective Plaintiffs and Class Members with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

85.     Through their knowing and intentional failure to provide Plaintiffs and the FLSA Collective Plaintiffs and Class Members with the accurate wage statements required by the NYLL, defendants have willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

86.     Due to defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiffs and the FLSA Collective Plaintiffs and Class Members are entitled to statutory penalties for defendants' failure to provide them with wage notices, plus, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

### FIFTH CLAIM FOR RELIEF

(New York Violations, NYLL §§ 650 *et seq.*;
N.Y. Comp. Codes R. & Regs. §§ 142 -2.4, 2.18 – spread-of-wages pay)

87.     Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs and Class Members, reallege and incorporate by reference all previous paragraphs.

88.     Defendants have failed to pay Plaintiffs and the FLSA Collective Plaintiffs and Class Members additional compensation of one hour's pay at the basic minimum hourly wage rate for each day that the length of the interval between the beginning and end of their workdays – including working time plus time off for meals plus intervals off duty – was greater than 10 hours.

89.     Through their knowing and intentional failure to pay Plaintiffs and the FLSA Collective Plaintiffs and Class Members spread-of-hours pay, Defendants have willfully violated NYLL, Article 19, §§ 650 et seq. and the supporting New York State Department of Labor Regulations, including N.Y. Comp. Codes R. & Regs. §§ 142 -2.4, 2.18.

90.     Due to Defendants' willful violations of the NYLL, Plaintiffs and the FLSA Collective Plaintiffs and Class Members are entitled to recover from Defendants their unpaid spread-of-hours wages, liquidated damages as provided for by the NYLL and the supporting

New York State Department of Labor Regulations, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### SIXTH CLAIM FOR RELIEF

(Violation of the Fair Labor Standards Act —Failure to
Reimburse for Expenses Relating to Tools of the Trade; 29 C.F.R. § 531.35)

91.     Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs and Class Members, reallege and incorporate by reference all previous paragraphs.

92.     At all relevant times, Defendants had a policy and practice of refusing to reimburse Plaintiffs, FLSA Collective Plaintiffs and Class Members for expenses incurred in relation to tools of the trade used by Plaintiffs, FLSA Collective Plaintiffs and Class Members in order to, *inter alia,* deliver, install, maintain, and remove real estate signage to and for customers of Defendants.

93.     Defendants failed to pay Plaintiffs, FLSA Collective Plaintiffs and Class Members for expenses incurred in  relation to tools of the trade, including, but not limited to, the cost of gasoline and vehicle maintenance.  At all relevant times, the Defendants had a policy and practice of  refusing to  reimburse  Plaintiffs, FLSA Collective Plaintiffs and Class Members for expenses  incurred  in  relation to tools of the trade used by Plaintiffs, FLSA Collective Plaintiffs and Class Members in order to, inter alia, deliver, install, maintain, and remove real estate signage to and for customers of Defendants.

94.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA  as  evidenced  by  their  failure  to  reimburse  Plaintiffs, FLSA Collective Plaintiffs and Class Members for  expenses  incurred  in  relation to tools of the trade used by Plaintiffs, FLSA Collective Plaintiffs and Class Members when Defendants knew or should have known such was due.

## **SEVENTH CLAIM FOR RELIEF**

(Violation of the New York Labor Law —Failure to Reimburse
for Expenses Relating to Tools of the Trade; 12 N.Y.C.R.R. § 142-2.10)

95.    Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs and Class

Members, reallege and incorporate by reference all previous paragraphs.

96.    At all relevant times, Defendants had a policy and practice of refusing to

reimburse Plaintiffs, FLSA Collective Plaintiffs and Class Members for expenses incurred in

relation to tools of the trade used by Plaintiffs, FLSA Collective Plaintiffs and Class Members in

order to, *inter alia,* deliver, install, maintain, and remove real estate signage to and for customers

of Defendants.

97.    Defendants failed to pay Plaintiffs, FLSA Collective Plaintiffs and Class

Members for expenses incurred in  relation to tools of the trade, including, but not limited to the

cost of gasoline and vehicle maintenance.  At all relevant times, the Defendants had a policy and

practice of  refusing to  reimburse  Plaintiffs, FLSA Collective Plaintiffs and Class Members for

expenses  incurred  in  relation to tools of the trade used by Plaintiffs, FLSA Collective Plaintiffs

and Class Members in order to, *inter alia,* deliver, install, maintain, and remove real estate

signage to and for customers of Defendants.

98.    Defendants knew of and/or showed a willful disregard for the provisions of the

NYLL  as  evidenced  by  their  failure  to  reimburse  Plaintiffs, FLSA Collective Plaintiffs and

Class Members for  expenses  incurred  in  relation to tools of the trade used by Plaintiffs, FLSA

Collective Plaintiffs and Class Members when Defendants knew or should have known such was

due.

## **EIGHTH CLAIM FOR RELIEF**

(FLSA Minimum Wage Claims, 29 U.S.C. § 201, et seq.,)

99.    Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs and Class

Members, reallege and incorporate by reference all previous paragraphs.

100.    At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.  At all relevant times, Defendants have employed, "employee[s]," including Plaintiff, the FLSA Collective Plaintiffs and Class members.

101.    Throughout the statute of limitations period covered by these claims, Defendants knowingly failed to pay Plaintiffs, FLSA Collective Plaintiffs and Class Members the federal minimum wage for each hour worked.  Defendants' failure to pay Plaintiffs, FLSA Collective Plaintiffs and Class Members the minimum wage was willful within the meaning of the FLSA and federal regulations.

102.    Plaintiff, on behalf of themselves and the FLSA Collective Plaintiffs and Class members, seek damages in the amount of his unpaid compensation, liquidated (double) damages as provided by the FLSA for minimum wage violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## NINTH CLAIM FOR RELIEF

(New York State Minimum Wage
Act, New York Labor Law § 650 et seq.)

103.    Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs and Class Members, reallege and incorporate by reference all previous paragraphs.

104.    Defendants did not pay Plaintiffs, the FLSA Collective Plaintiffs and Class members minimum wage for all hours worked.

105.    Throughout the statute of limitations period covered by these claims, Defendants knowingly failed to pay Plaintiffs, the FLSA Collective Plaintiffs and Class members the New York State minimum wage for each hour worked.  Defendants' failure to pay Plaintiffs, FLSA Collective Plaintiffs and Class Members the minimum wage was willful within the meaning of

N.Y. Lab. Law § 663.

106.    As a result of Defendants' willful and unlawful conduct, Plaintiffs, FLSA Collective Plaintiffs and Class Members are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs and Members of the Class, prays for relief as follows:

A.    Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated Members of the FLSA opt-in Class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.    Designation of Plaintiffs as representatives of the FLSA Collective Plaintiffs;

C.    Designation of this action as a Class Action pursuant to F.R.C.P. 23;

D.    Designation of Plaintiffs as representatives of the Class;

E.    An award of damages, according to proof, including punitive and liquidated damages, to be paid by Defendants;

F.    Penalties available under applicable laws;

G.    Costs of action incurred herein, including expert fees;

H.    Attorney's fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. § 663 and other applicable statutes;

I.    Pre-Judgment and post-judgment interest, as provided by law; and

J.    Such other and further legal and equitable relief as this Court deems necessary,

just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs and Class Members, hereby demand a jury trial on all causes of action and claims with respect to which they have a right.

Dated:  Great Neck, New York
         August 15, 2021

LAW OFFICE OF BRIAN L. GREBEN

/s/ Brian L. Greben
Brian L. Greben
316 Great Neck Road
Great Neck, NY 11021
(516) 304-5357