UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FRANK RAFTER JR., THOMAS KELLY, and SEFU SIMMS, on behalf of themselves and others similarly situated,

Plaintiffs,

v.

Case No. 21 cv 4588 (ARR) (LGD)

EVERLAST SIGN & SERVICE INC., ANN TIEFENWORTH, ALEXA TIEFENWORTH, LISA PIAONE, FRANK PIAONE, and ARTHUR FLYNN,

Defendants.
------------------------------------------------------------------X

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION**

---

Brian L. Greben, Esq.
LAW OFFICE OF BRIAN L. GREBEN
*Attorneys for Plaintiffs*
316 Great Neck Road
Great Neck, NY 11021
Tel: (516) 304-5357
Fax: (516) 726-8425
E-mail: brian@grebenlegal.com

# TABLE OF CONTENTS


PRELIMINARY STATEMENT……………………………………………..………...1

BACKGROUND………………………………………………………..……………...1

A. Everlast and its Unlawful Practices…………………………………………...1

B. The Individual Defendants…..……………………………………………..........4

i. Plaintiff Frank Rafter Jr…………………………………………………….4

ii. Plaintiff Thomas Kelly……………………………………………………...6

iii. Plaintiff Sefu Simms...………………………………………………….....7

C. Procedural History…………………………………………………………….7

D. Plaintiffs Were not Independent Contractors……………………………………8

ARGUMENT……………………………………….....................................11

THE COURT SHOULD APPROVE NOTICE……………………….....................11

A. Early Notice to "Similarly Situated" Employees is Appropriate and Necessary……………………………………………………………......11

B. The Court Should Certify the Collective Action and Order Notice………………………...............................................................................13

i. The Standard……………………………………………………13

ii. The Merits of the Plaintiffs' Action are Immaterial to the Determination of Conditional Certification……………………….......................................16

iii. Plaintiff has Exceeded the Modest Factual Showing Required for Conditional Certification...........................................................17

C. The Court Should Certify a Six Year Notice Period……………………….........18

D. Discovery of Contact Information is Proper and Necessary Under the FLSA……19

E. The Proposed Notice is Fair and Adequate………………………….....................20

F. Notice Should be Disseminated Via U.S Mail, E-Mail, and Text

Message……………………….................................................................................21

G. The Court Should Require Defendants to Post Notice…………..………………….....22

H. The Court Should Authorize a Reminder Notice………………………………….23

I. Equitable Tolling……………………………………………………………….24

CONCLUSION………………………………………………………………..…24

# TABLE OF CASES

**Cases**

*Anglada v. Linens n' Things, Inc.*, 06 cv 12901, 2007 WL 1552511 2007 U.S. Dist. LEXIS 39105 (S.D.N.Y. Apr. 26, 2007)……………………….………………………….…..13, 16, 19

*Archie v. Grand Cent. Partnership, Inc.*, 997 F. Supp. 504, 535 (S.D.N.Y. 1998)……………....8

*Armata v. Unique Cleaning Servs., LLC*, 13 cv. 3625 (DLI) (RER), 2015 WL 12645527, *3 (E.D.N.Y. 2015)……………………………………………………………………………..8

*Avila v. Northport Car Wash, Inc.*, 774 F. Supp. 2d 450, 455 (E.D.N.Y. 2011)……….……..18

*Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 740, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981)………………………………………………………………………………………9

*Braunstein v E. Photographic Labs.*, 600 F.2d 335, 336 (2d Cir. 1975)………………………...11

*Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058–61 (2d Cir. 1988)…………………………...9

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707, 65 S.Ct. 895, 89 L.Ed. 1296 (1945)………...10

*Chhab v. Darden Rests., Inc.*, 2013, WL 5308004, 11 cv 8345, 2013 U.S. Dist. LEXIS 135926 (S.D.N.Y. Sept 20, 2013)……………………………………………………….….……...19, 23

*Cook v. United States* 109 F.R.D. 81, 83 (E.D.N.Y. 1995)………………………………………12

*Cuzco v. Orion Builders, Inc.* 477 F. Supp. 2d 628 (S.D.N.Y 2007)…………………….11, 14, 19

*Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009)……………………………..17

*Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 374 (E.D.N.Y. 2008)……………………17

*Enriquez v. Cherry Hill Mkt. Corp.*, 2012 WL 440691, No. 10 cv 5616 (FB) (ALC), 2012 U.S. Dist. LEXIS 17036, at *4 (E.D.N.Y. Feb. 10, 2012)……………………………………………17

*Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. 2007)…11, 13, 14, 16, 19, 21

*Fernandez v. Sharp Mgmt. Corp.*, 2016 WL 5940918, 16 cv 0551 (JGK) (SN), 2016 U.S. Dist. LEXIS 141916, at *9 (S.D.N.Y. Oct. 13, 2016)…………………………………………………17

*Fonseca v. Dircksen & Talleyrand, Inc.*, 2014 WL 1487279, 13 cv 5124 (AT), 2014 U.S. Dist. LEXIS 52744, *18 (S.D.N.Y. Apr. 10, 2014)……………………………………………………...18

*Foster v. Food Emporium,* 2000 WL 1737858, 99 cv 3860, 2000 U.S. Dist. LEXIS 6053, *5

(S.D.N.Y. Apr. 26, 2000)……………………………………………………………………….12

*Gayle v. Harry's Nurses Registry, Inc.*, 594 F. App'x 714, 717 (2d Cir. 2014)…………………9

*Gjurovich v. Emmanuel's Marketplace*, 282 F. Supp. 2d 91 (S.D.N.Y. 2003)……………..13, 15

*Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 534 (2d Cir. 2016)………………………8

*Guallpa v. N.Y. Pro Signs Inc.*, 11 cv 3133 (LGS) (FM), 2014 WL 2200393, *6 (S.D.N.Y. May 27, 2014), *report and recommendation adopted sub nom. Guallpa v. NY Pro Signs Inc.*, 11 cv 03133 (LGS), 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014)……………………………………4

*Hallissey v. Amer. Online, Inc.*, 2008 WL 465112, 99 cv 3785, 2008 U.S. Dist. LEXIS 18387, *6 (S.D.N.Y. Feb. 19, 2008)……………………………………………………………………...14

*Harhash v. Infinity West Shoes, Inc.*, 2011 WL 4001072, 10 cv 8285, 2011 U.S. Dist. LEXIS 96880 (S.D.N.Y. Aug. 25, 2011)……………………………………………………………...22

*Hart v. Rick's Cabaret Intern. Inc.,* 967 F.Supp.2d 901, 923 (S.D.N.Y.2013)…………………..10

*Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 261 (S.D.N.Y. 2015)…………………...10

*Henry v. Concord Limousine, Inc.*, 12 cv 0494 (JS) (WDW), 2014 WL 297303, *7 (E.D.N.Y. Jan. 24, 2014)…………………………………………………………………………………10

*Holick v. Cellular Sales of New York, LLC,* 802 F.3d 391, 399 (2d Cir. 2015)…………………8

*Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997). ....................................13, 15

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)……………………………11, 12

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007)………………...12, 14

*Irizarry v. Catsimatidis,* 722 F.3d 99 (2d Cir. 2013)……………………………………….8, 10

*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170-71 (S.D.N.Y. 2014)…………………………24

*Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 369 (S.D.N.Y. 2014)……………………………..17

*Kemper v. Westbury Operating Corp.*, 12 cv 895, 2012 WL 4976122, 2012 U.S. Dist. LEXIS 149682 (E.D.N.Y Oct. 17, 2012)……………………………………………………………...24

*Khalil v. Original Homestead Rest., Inc.*, 2007 WL 7142139, 07 cv 0695, 2007 U.S. Dist. LEXIS 70372, at *3 (S.D.N.Y. Aug. 9, 2007)…………………………………………………………...15

*Kinney v. Artist & Brand Agency LLC*, 13 cv 8864 (LAK) (DF), 2015 WL 10714080, *12 (S.D.N.Y. Nov. 25, 2015), *report and recommendation adopted*, 13 cv 8864 (LAK), 2016 WL 1643876 (S.D.N.Y. Apr. 22, 2016)…………………………………………………………10

*Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 354 (E.D.N.Y. 2008)…………………16

*Lee v. ABC Carpet & Home*, 00 cv 0984, 2008 U.S. Dist. LEXIS 38725, *3-4 (S.D.N.Y. May 9, 2008)……………………………………………………………………………………..20

*Lee v. ABC Carper & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006)……………………………..14, 19

*Lopez v. MNAF Pizzeria, Inc.*, 18 cv 06033 (ALC), 2021 WL 1164336, *11 (S.D.N.Y. Mar. 25, 2021)………………………………………………………………………………………3

*Lopes v. Heso, Inc.*, 2017 WL 4863084, 16 cv 6796 (MKB)(RML), 2017 U.S. Dist. LEXIS 178709, *15 (E.D.N.Y. Oct. 27, 2017)……………………………………………………..18

*Lujan v. Cabana Mgmt., Inc.*, 2011 WL 3235628, No. 10 cv 755 (ILG), 2011 U.S. Dist. LEXIS 82204, *9, n.3 (E.D.N.Y. July 27, 2011)…………………………………………………...21

*Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y, 2007)……………14, 16

*Malloy v. Rickard Fleischman & Assoc. Inc.*, 2009 WL 1585979, 09-cv-322 (CM), 2009 U.S. Dist. LEXIS 51790, *5 (S.D.N.Y. June 3, 2009)……………………………………………15, 22

*Martin v. Sprint/United Mgmt. Co.*, 15 cv 5237(PAE), 2016 WL 30334, 2016 U.S. Dist. LEXIS 352, *57 (S.D.N.Y. Jan. 4, 2016)…………………………………………………………...21

*Masson v. Ecolab, Inc.*, 2005 WL 2000133, 04-cv-4488, 2005 U.S. Dist. LEXIS 18022, *37 (S.D.N.Y. Aug. 17, 2005)……………………………………………………………………..15

*Mazur v. Olek Lejbzon & Co.*, 2005 WL 3240472, 05 cv 2194, 2005 U.S. Dist. LEXIS 30321 (S.D.N.Y. Nov. 30, 2005)………………………………………………….………………...14, 15

*Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007)…………..13, 14, 16

*Metevier v. CARR Properties, Inc.*, 15 cv 3039 (ER), 2016 WL 5793742, *6–7 (S.D.N.Y. Sept. 30, 2016)…………………………………………………………………………………10

*Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 61 (E.D.N.Y. 2011)…………………………..…21

*Morris v. Lettire Constr., Corp.*, 896 F. Supp. 2d 265, 275 (S.D.N.Y. 2012)…………………...23

*Myers v. Hertz Corp.*, 624 F.3d. 537, 554-55 (2d Cir. 2010)……………………………………13

*Padilla v. Manlapaz*, 643 F.Supp.2d 302, 311 (E.D.N.Y. 2009)………………………………...10

*Patton v. Thomson Corp.*, 264 F. Supp. 2d 263, 267-68 (E.D.N.Y. 2005)………………12, 19, 20

*Pippins v. KPMG LLP*, 11 cv 377 (CM) (JLC), 2012 WL 19379, 2012 U.S. Dist. LEXIS 949, *41 (S.D.N.Y. January 3, 2012)……………………………………………………………….21

*Puglisi v.TD bank, N.A.*, 998 F.Supp 2d. 95, 101-02 (E.D.N.Y. 2014)………………………….23

*Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)…………………………...14

*Rosario v. Valentine Avenue Discount Store, Co., Inc.*, 828 F. Supp. 2d 508, 521 (E.D.N.Y. 2011)…………………………………………………………………………………..21

*Rutherford Food Corp. v. McComb,* 331 U.S. 722, 727, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947)…9

*Shajan v. Bartolo, Ltd.*, 2010 WL 18095, 10 cv 1385, 2010 U.S. Dist. LEXIS 54581 (S.D.N.Y. June2, 2010)……………………………………………………………………………...20

*Sherrill v. Sutherland Global Servs., Inc*., 487 F. Supp. 2d 344, 350 (W.D.N.Y. 2007)…….19, 22

*Soler v. G & U, Inc.*, 86 F.R.D. 524, 531-32 (S.D.N.Y. 1980)………………………………..22

*Soto v. Armstrong Realty Mngmnt. Corp.,* 15 cv. 9283 (AJN) (JCF), 2016 WL 7396687, *6 (S.D.N.Y. Dec. 21, 2016)…………………………………………………………………8

*Torres v. Gristede's Operating Corp.*, 2006 U.S. Dist. LEXIS 74039, *37-38 (S.D.N.Y. Sept 28, 2006)…………………………………………………………………………………..15

*Toure v. Cent. Parking Sys. Of N.Y.*, 2007 WL 2872455, 05 cv 5237, 2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28. 2007)…………………………………………...……12, 14, 16

*Vasto v. Credico (USA) LLC*, 2016 WL 26581725, No. 15-CV-9298 (PAE), 2016 U.S. Dist. LEXIS 60158, at *50 (S.D.N.Y. May 5, 2016)…………………………………………….21

*Velez v. Sanchez*, 693 F.3d 308, 326 (2d Cir. 2012)……………………………………………9

*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F.Supp 2d 445 (S.D.N.Y. 2011)…………..21, 22

*Winfield v. Citibank*, 843 F.Supp. 2d 397, 410 (S.D.N.Y. 2012)……………………………18, 19

*Xin Long Lin v. New Fresca Tortillas, Inc.*, 18 cv 3246 (RJD) (RER), 2019 WL 3716199, **4-5 (E.D.N.Y. May 1, 2019)……………………………………………………………………..3

*Yahares v. Rest. Assocs. Events Corp.*, 10 cv 935, 2011 U.S. Dist. LEXIS 23115, *4 (E.D.N.Y. Mar. 8, 2011)……………………………………………………………………………24

*Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 342 (S.D.N.Y. 2005)……………………………..8

*Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)…………………………16

*Zhao v. Benihana, Inc.*, 2001 WL 845000, 01-cv-1297, 2001 U.S. Dist. LEXIS 10676, *2 (S.D.N.Y. May 7, 2001)………………………………………………………………………15

**Statutes, Regulations and Rules**

12 NYCRR § 142-2.4……………………………………………………………………. 3

12 NYCRR § 142-2.10……………………………………………………………2, 3

29 U.S.C. § 207……………………………………………………………………2

29 U.S.C. §216 (b)…………………………………………………1, 4, 11, 12, 16, 20, 24

29 U.S.C. §§ 255, 256(b)………………………………………………………………12

NYLL § 623(2)……………………………………………………………………10

NYLL § 650…………………………………………………………………………2

NYLL § 198 (1-a)……………………………………………………………………4

NYLL § 198 (1-b) and (1-d)…………………………………………………………4

## PRELIMINARY STATEMENT

The instant motion seeks conditional certification of this action as a representative collective action pursuant to the FLSA, 29 U.S.C. §216 (b), on behalf of all employees who were similarly situated to plaintiffs within the last six years. In summary (although, as discussed below, the merits of the claims in this case are not presently before the Court on this motion), the evidence demonstrates a consistent pattern of wrongdoing by defendants, shows a common policy to violate the Fair Labor Standards Act ("FLSA"), and is strongly probative of the fact that there are other "similarly situated" employees who worked for the defendants and did not receive proper compensation for all hours worked, or reimbursement for fuel or vehicle maintenance, in accordance with the FLSA. The result is that defendants are extracting additional hours from their workforce without compensating workers for this time. For purposes of this conditional certification motion, the experience of plaintiffs, including their testimony about other workers, is sufficient to illustrate that there was a "common practice or policy."

Accordingly, plaintiffs have met their minimal burden for the Court to grant the present motion and conditionally certify this case as a collective action and authorize the distribution of notice of this action to all similarly situated individuals in the manners requested below.

## BACKGROUND

### A. Everlast and its Unlawful Practices

Everlast Sign & Service Inc. ("Everlast") is a company specializing in, *inter alia,* the delivery, installation, maintenance, and removal of real estate signage. Specifically, Everlast is in the business of erecting "for sale" and similar real estate signage for, inter alia, real property on Long Island. Defendants Ann Tiefenworth and Alexa Tiefenworth are the principals and owners of Everlast; defendants Lisa Piaone and Frank Piaone are Everlast's office managers; and defendant Arthur Flynn is Everlast's warehouse manager (collectively, the "individual

defendants"). The individual defendants exercised control over the terms and conditions of the employment of plaintiffs, FLSA Collective Plaintiffs and Class Members. *See* Complaint, ECF Doc. No. 1, ¶¶11-14, 17-20, 35, 54, 58, annexed to the accompanying affirmation of Brian L. Greben, Esq. as Exhibit "1"[1]; Moving Affidavit of Plaintiff Frank Rafter Jr., dated September 16, 2022, ¶¶2, 4, 18; Moving Affidavit of Plaintiff Thomas Kelly, dated September 20, 2022, ¶¶2, 4; Moving Affidavit of Plaintiff Sefu Simms, dated September 24, 2022, ¶¶2, 4, 14, 15.

Defendants knowingly and willfully operate their business with a policy of misclassifying employees as "independent contractors" in an unlawful scheme to avoid their obligations under the FLSA and New York Labor Law ("NYLL") including, but not limited to, the payment of overtime reimbursement of the costs of operating plaintiffs' cars. Complaint, ¶¶58-66; Rafter Affidavit, ¶¶1, 4, 12, 14, 17-19; Kelly Affidavit, ¶¶1, 4, 9, 10, 12-19; Simms Affidavit, ¶¶1, 4, 8-15.

Defendants have never paid their personnel, including the named plaintiffs, an overtime rate of 1.5 times their regular hourly rate for hours worked after having already worked 40 hours per week, as they were required to do under the FLSA and the NYLL. 29 U.S.C. § 207; NYLL § 650. *See* Complaint, ¶¶24, 59, 60; Rafter Affidavit, ¶¶12, 17-19; Kelly Affidavit, ¶¶10, 15, 16, 18, 19; Simms Affidavit, ¶¶6, 9, 14, 15. Plaintiffs worked more than 40 hours per week during nearly every week of their employment. Moreover, defendants did not allow plaintiffs to take breaks during their shifts for meals or rest, and, as noted above, made frequent unlawful deductions from their pay. Complaint, ¶¶39-42, 46, 51; Rafter Affidavit, ¶¶6, 7, 9, 10, 12, 13, 17-19; Kelly Affidavit, ¶¶6, 10-12, 15, 16; Simms Affidavit, ¶¶5, 6, 8, 9, 10, 14-15; 12 NYCRR § 142-2.10 ("Deductions and expenses").

[1] All Exhibits referenced in this Memorandum are annexed to the Affirmation of Brian L. Greben unless otherwise noted.

Furthermore, defendants knowingly and willfully operated their business with a policy of not compensating/reimbursing sign installers (such as plaintiffs) for milage and/or costs of tools of the trade. Specifically, Everlasts' employees were required to use their own cars for delivery, installation, maintenance, and removal of signage, and also paid for the gas and maintenance, with no reimbursement from defendants. Complaint, ¶¶43, 49, 53, 62; Rafter Affidavit, ¶¶11, 12 14, 17-19; Kelly Affidavit, ¶¶9, 12, 15, 16, 18, 19; Simms Affidavit, ¶¶ 8, 9, 11, 14, 15. Defendants' failure to reimburse plaintiffs for their milage or the costs of tools of the trade violates the FLSA and NYLL. *Lopez v. MNAF Pizzeria, Inc.*, 18 cv 06033 (ALC), 2021 WL 1164336, *11 (S.D.N.Y. Mar. 25, 2021); *Xin Long Lin v. New Fresca Tortillas, Inc.*, 18 cv 3246 (RJD) (RER), 2019 WL 3716199, **4-5 (E.D.N.Y. May 1, 2019); 12 NYCRR § 142-2.10 ("Deductions and expenses").

Defendants consistently suffered, permitted and/or instructed employees to work over 10 hours per day. However, defendants do not pay plaintiffs one additional hour of pay at the basic minimum hourly rate for all of the times that the length of the interval between the beginning and end of their workday – including working time plus time off for meals plus intervals off duty – was greater than 10 hours, as they were required to do under the NYLL. Complaint, ¶61; Rafter Affidavit, ¶¶5; Kelly Affidavit, ¶13; Simms Affidavit, ¶12. Under the NYLL and supporting regulations, employers are liable to their employees for an additional one hour of pay at the standard minimum wage rate for every day in which an employee's workday exceeds 10 hours. *See inter alia*, 12 NYCRR § 142-2.4 ("Additional rate for split shift and spread of hours"). Defendants never made Spread of Hours payments to plaintiffs, and owe them additional damages for this omission.

Under the FLSA, an employer who unlawfully fails to pay minimum wage or overtime rates to an employee "shall be liable to the employee or employees affected in the amount of

their…unpaid overtime compensation, as the case may be, and in *an additional equal amount as liquidated damages*." 29 U.S.C.A. § 216(b) (emphasis provided). The NYLL also provides for liquidated damages equal to 100% of the underpayment. NYLL § 663. Liquidated damages are mandatory unless defendants can prove that they acted in good faith. *Guallpa v. N.Y. Pro Signs Inc.*, 11 cv 3133 (LGS) (FM), 2014 WL 2200393, *6 (S.D.N.Y. May 27, 2014), *report and recommendation adopted sub nom. Guallpa v. NY Pro Signs Inc.*, 11 cv 03133 (LGS), 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014); NYLL § 198(1-a).

Defendants have not kept accurate records of wages earned or of hours worked by plaintiffs. Moreover, defendants failed to provide defendants with accurate wage notices within ten (10) days of the commencement of their employment or changes in their rates of pay, and did not issue "pay stubs" containing accurate information about plaintiffs' wages, hourly rates, and taxes. Complaint, ¶¶64-66; Rafter Affidavit, ¶16; Kelly Affidavit, ¶14; Simms Affidavit, ¶¶12,13. In this regard, defendants violated relevant New York law, including NYLL § 198 (1-b) and (1-d), and owe each plaintiff an additional $10,000 in statutory fines.

**B. The Individual Defendants**

**i. Plaintiff Frank Rafter Jr.**

Everlast hired plaintiff Frank Rafter Jr. during Everlast's 2004-05 season, and he continued working for Everlast until December 2020. From at least Spring 2015 through the beginning of the Covid-19 pandemic in March 2020, Mr. Rafter worked the same schedule, which varied slightly by the seasons. From mid-December through mid-March, Mr. Rafter began every day from Monday through Friday at 5:00 a.m., when he arrived at Everlast's warehouse, unloaded (and sometimes repaired or modified) the signs and posts he had removed from properties during his previous workday, and picked up the materials for his daily assignments (i.e., signs and signposts). He then travelled to each property that Everlast sent him

and erected signs, as per his instructions. He typically finished installation between 1:00 p.m. and 2:00 p.m. Thereafter, he returned home and spent approximately one hour on the telephone with Everlast's customers discussing any problems that arose over the course of the day, such as instructions that were unclear or could not be followed, needed equipment or materials, etc. He finished this telephone work between 2:00 p.m. and 3:00 p.m., then returned to the warehouse at 5:15 p.m. and picked up his instructions for the following day. From Monday through Thursday, and again on Sunday, he spent an additional two hours planning the next workday's route. Mr. Rafter worked an average of 57.5 hours per week for Everlast during this part of the year. Complaint, ¶¶36-39; Rafter Affidavit, ¶¶5, 6.

From mid-March through mid-December (i.e., the majority of the year), Mr. Rafter began his day at the same time and in the same manner as he did during the other months of the year, but did not finish his daily telephone calls until between 3:30 and 4:30 p.m. Mr. Rafter travelled to the warehouse for the next day's assignment at 5:15 p.m. (as he did during the slower season) and planned the next workday's route. Accordingly, Mr. Rafter worked 65 hours per week during Everlast's busier season. Complaint, ¶40; Rafter Affidavit, ¶7.

From 2014 through 2018, defendants paid Mr. Rafter $1,000.00 per week; from 2018 through 2020, they paid him $1,050.00 per week. From March 16, 2020 through May 31, 2020, Everlast reduced Mr. Rafter's workload because of the pandemic. During this period Mr. Rafter worked three days per week for a total 40.5 hours, for which defendants paid him $630 per week. From June 1, 2020, through December 2020, Mr. Rafter resumed his 67.5 hour per week schedule, and Everlast resumed paying him $1,050.00 per week. Complaint, ¶¶40-43; Rafter Affidavit, ¶¶8-10.

Mr. Rafter drove at least 125 miles per day for Everlast during the busier part of the year, 80 miles per day during the slower part of the year, and 60 miles per day during the pandemic

slowdown in early 2020. Defendants never reimbursed him for the fuel he purchased or the substantial maintenance expenses he incurred. Complaint, ¶43; Rafter Affidavit, ¶11.

**ii. Plaintiff Thomas Kelly**

Everlast hired Thomas Kelly in March 2013. Mr. Kelly's schedule was consistent throughout the entire year, and there were no breaks in his schedule comparable to Mr. Rafter's. Mr. Kelly worked Mondays through Fridays. His daily work routine began around 5:30 a.m., when he arrived at the Everlast warehouse to unload the signs and posts he had removed from properties during his previous workday, and to make necessary modifications and/or repairs to posts (such inserting O-ring screws into new posts). The warehouse doors opened around 6:30 a.m., at which time Mr. Kelly would map his daily route using the company computer and made sure he had the proper materials for his drive. He typically left the warehouse and began his route around 9:00 a.m., and worked straight through the day until completing his assignments between 5:00 and 7:00 p.m. Accordingly, Mr. Kelly worked an average of 62.5 hours per week. Complaint, ¶¶44-46; Kelly Affidavit, ¶¶5, 6.

Mr. Kelly worked the above schedule every week from his hiring until approximately January 2017, when he was forced to take a two month break from work due to a foot injury. He returned to Everlast in March 2017, but had to take more time off between April and September of that year due to ongoing medical complications. Mr. Kelly returned again to Everlast in October 2017, and continued working his previous schedule until May 2019. Complaint, ¶47; Kelly Affidavit, ¶7.

Defendants paid Mr. Kelly $1,050 per week. Complaint, ¶48; Kelly Affidavit, ¶8.

Mr. Kelly drove at least 125 miles per day for defendants throughout the entirety of his tenure with Everlast. Defendants never reimbursed him for the fuel he purchased or the substantial maintenance expenses he incurred. Complaint, ¶49; Kelly Affidavit, ¶9.

### iii. Plaintiff Sefu Simms

Sefu Simms worked for defendants from August 2019 through the beginning of the pandemic in March 2020. Mr. Simms worked Monday through Fridays. Each workday, he arrived at defendants' office between 6:15 a.m. and 6:30 a.m. to plan his day's route using defendants' computer, unload his previous workday's signs and posts, pick up the new day's signs and posts, and make any necessary repairs or alterations. Mr. Simms typically left defendants' facilities to begin his route between 7:30 a.m. and 7:45 a.m. From the beginning of his employment in August 2019 through the end of October 2019, he finished his route at 7:30 p.m.; from November 19, 2019, through the end of his employment with defendants in March 2020, he completed his routes at 6:00 p.m. Accordingly, Mr. Simms worked an average of 66.25 hours per week from August 2019 through October 2019, and 58.75 hours per week from November 2019 through March 2020. Complaint, ¶¶50-51; Simms Affidavit, ¶¶5-6.

Defendants paid Mr. Simms $1,000 per week. Complaint, ¶52; Simms Affidavit, ¶7.

Mr. Simms drove at least 100 miles per day for Everlast during the busier part of the year and 90 miles per day during the slower part of the year. Defendants never reimbursed him for the fuel he purchased or the substantial maintenance expenses he incurred. These maintenance expenses included, but were not limited to, replacement of his car's transmission. Complaint, ¶52; Simms Affidavit, ¶8.

## C. Procedural History

On August 15, 2021, plaintiffs filed a class and collective complaint against defendants seeking unpaid regularly hourly rate and overtime compensation under the FLSA and NYLL, as well spread-of-hours pay, unreimbursed milage and maintenance expenses, liquidated damages, and statutory penalties for failing to provide mandatory documents to plaintiffs and their similarly situated co-workers – i.e. defendants' staff, including, but not limited to, other sign-

erectors - who work or have worked at Everlast Sign & Service Inc. at any time from August 15, 2015 through the present. Exhibit "1."

Defendants filed an Answer & Affirmative Defenses on October 19, 2021 (ECF Doc. No. 13). Exhibit "2."

**D. Plaintiffs Were not Independent Contractors**

Defendants' defense is premised entirely on their claim that plaintiffs were independent contractors. Although (as discussed in section I.b.i., below) the relative merits of the parties' positions are irrelevant to motions for collective precertification, it should be noted that there is no question that plaintiffs worked for defendants as *employees* – not independent contractors – pursuant to the FLSA and the NYLL. *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 534 (2d Cir. 2016); *Soto v. Armstrong Realty Mngmnt. Corp.,* 15 cv. 9283 (AJN) (JCF), 2016 WL 7396687, *6 (S.D.N.Y. Dec. 21, 2016); *Armata v. Unique Cleaning Servs., LLC*, 13 cv. 3625 (DLI) (RER), 2015 WL 12645527, *3 (E.D.N.Y. 2015) ("Like the FLSA, the NYLL definition of 'employer' is an expansive one, encompassing any person employing any employer.") (citations and quotation marks omitted); *Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 342 (S.D.N.Y. 2005).

The analysis of whether an individual was an employee must be made with the understanding that the NYLL "is to be liberally construed so as to permit as many individuals as possible to take advantage of its benefits." *Archie v. Grand Cent. Partnership, Inc.*, 997 F. Supp. 504, 535 (S.D.N.Y. 1998) (citations omitted). Moreover, the determination of whether an individual is an "employee", or an "independent contractor" cannot be based on the parties' agreements or the wording of a contract. *Holick v. Cellular Sales of New York, LLC,* 802 F.3d 391, 399 (2d Cir. 2015) ("For purposes of the FLSA, a company's decision to label a worker as an 'independent contractor' or a non-employee will not carry the day.") (citing *Irizarry v.*

*Catsimatidis,* 722 F.3d 99, 104 (2d Cir. 2013)). Rather, it is based on the "economic reality" of the situation:

> Whether a worker is treated as an employee or an independent contractor under FLSA is determined not by contractual formalism but by "economic realities." Our analysis of the relationship turns on the economic-reality test, which weighs (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business. No one of these factors is dispositive; rather, the test is based on a totality of the circumstances.

*Gayle v. Harry's Nurses Registry, Inc.*, 594 F. App'x 714, 717 (2d Cir. 2014) (citing *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 727, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947)) (other citations and quotation marks omitted). *See also Velez v. Sanchez*, 693 F.3d 308, 326 (2d Cir. 2012); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058–61 (2d Cir. 1988).

Every aspect of plaintiffs' work for Everlast leads to the conclusion that they were Everlast's employees. These factors include, *inter alia,* that Everlast and its management had complete control over virtually every aspect of their work; that the work they performed was the central aspect of Everlast's business; that they worked for Everlast every week for many years; that Everlast was plaintiffs' *only* employer during these periods; and that plaintiffs had no opportunity for profit or loss other than the set amount they were paid. Complaint, ¶¶3, 17-20, 35-42, 44-47, 50, 51, 54-58; Rafter Affidavit, ¶¶2, 4-10, 17-19; Kelly Affidavit, ¶¶2, 4-7, 10, 13, 17, 19; Simms Affidavit, 2, 4-6, 14, 15.

Defendants have argued that plaintiffs signed "Independent Contractor Agreements" and are therefore estopped or otherwise precluded from claiming to be employees. However, as noted above, it is indisputable that workers' rights under the FLSA and NYLL *cannot be waived*, by contract or otherwise. *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 740, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) ("FLSA rights cannot be abridged by contract or otherwise

waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate.") (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707, 65 S.Ct. 895, 89 L.Ed. 1296 (1945)); *Padilla v. Manlapaz*, 643 F.Supp.2d 302, 311 (E.D.N.Y. 2009) ("[I]t is settled law that an employee may not waive the protections of the [New York] Labor Laws") (citations omitted). Moreover, "a person's agreement to classify [himself] as other than an employee is not dispositive of [his] legal status." *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 261 (S.D.N.Y. 2015) (citing *Brooklyn, supra*, 324 U.S. at 707 ("No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act."); *Irizarry, supra*, 722 F.3d at 104) (other citations omitted)).

Furthermore, the fact that Mr. Rafter and Mr. Thomas may have deducted some of their expenses in an attempt to recoup a small portion of the reimbursements defendants owed them is not a sufficient basis for concluding that they were independent contractors. *Kinney v. Artist & Brand Agency LLC*, 13 cv 8864 (LAK) (DF), 2015 WL 10714080, *12 (S.D.N.Y. Nov. 25, 2015), *report and recommendation adopted*, 13 cv 8864 (LAK), 2016 WL 1643876 (S.D.N.Y. Apr. 22, 2016) ("[T]he tax treatment of the worker's income is not dispositive.") (citing *Hart v. Rick's Cabaret Intern. Inc.,* 967 F.Supp.2d 901, 923 (S.D.N.Y.2013)).

Defendants allege that their sign delivery personnel were held to be "independent contractors" by the New York Unemployment Insurance Appeal Board. Even if, hypothetically, this was true, it would have no bearing on the instant matter. *See Henry v. Concord Limousine, Inc.*, 12 cv 0494 (JS) (WDW), 2014 WL 297303, *7 (E.D.N.Y. Jan. 24, 2014) ("[T]he New York State Labor Law expressly prohibits unemployment proceedings from having any preclusive effect in subsequent litigation, with a few enumerated exceptions, all of which do not apply in this case.") (citing NYLL § 623(2)) (other citations omitted). *See also Metevier v. CARR Properties, Inc.*, 15 cv 3039 (ER), 2016 WL 5793742, *6–7 (S.D.N.Y. Sept. 30, 2016).

## ARGUMENT

### THE COURT SHOULD APPROVE NOTICE

To protect putative collective action members' rights and interests, and to promote judicial economy and effective case management, the Court should approve notice to be distributed to all Covered Employees. Notice is appropriate because the initial pleadings and preliminary evidence show that all Covered Employees are similarly situated. The Covered Employees all worked as sign installers – i.e., they picked up real estate signs and posts from defendants' warehouse, drove long routes set out by defendants on which they would travel between designated houses, erected new signs and/or removed old ones, and brought the removed and unused signs back to the warehouse. Defendants failed to pay the sign installers the proper minimum wage or overtime wages, and failed to reimburse them for the cost of operating their vehicles in Everlasts' service. Thus, the installers "together were victims of a common policy or plan that violated the law." *Cuzco v. Orion Builders, Inc.* 477 F. Supp. 2d 628, 633 (S.D.N.Y 2007) (internal quotation omitted).

**A. Early Notice to "Similarly Situated" Employees is Appropriate and Necessary**

The FLSA contemplates the maintenance of collective actions by similarly situated employees for an employer's violation of the provisions requiring payment of overtime premium. 29 U.S.C. §216(b). Such collective actions are favored under the law because they benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact" and provide employees with the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Braunstein v E. Photographic Labs.*, 600 F.2d 335, 336 (2d Cir. 1975); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007). The

alternative, a multitude of virtually identical individual suits, would burden courts unnecessarily and risk inconsistent judgments arising from the same events and brought under the same laws.

Expedited notice is critical in FLSA actions. Unlike absent class members in a Rule 23 class action, potential class member in a FLSA collective must affirmatively consent ("opt-in") to be covered by the suit. 29 U.S.C. §216(b). The statute of limitations continues to run on each individual's claim until he or she files a written consent form with the Court. 29 U.S.C. §§ 255, 256(b). To assure that the rights protected by the FLSA do not grow stale through lack of knowledge, the Supreme Court has held that courts have broad authority to facilitate early notice of the existence of the lawsuit to potential opt-in plaintiffs. *Hoffmann-La Roche, supra*, 493 U.S. at 170. Notice to putative class members should be given as soon as possible since, because of the statute of limitations, "potential plaintiffs may be eliminated as each day goes by." *Foster v. Food Emporium,* 2000 WL 1737858, 99 cv 3860, 2000 U.S. Dist. LEXIS 6053, *5 (S.D.N.Y. Apr. 26, 2000); *see also Cook v. United States* 109 F.R.D. 81, 83 (E.D.N.Y. 1995) ("Certainly, it is unlikely that Congress, having created a procedure for representative action, would have wanted to prevent the class representative from notifying other members of the class that they had a champion.") (internal quotations and citations omitted). Thus, early distribution of a notice of pendency is crucial in a FLSA collective action.

The Court need not and should not delay the sending of notice until the completion of discovery. *Toure v. Cent. Parking Sys. Of N.Y.*, 2007 WL 2872455, 05 cv 5237, 2007 U.S. Dist. LEXIS 74056, *8 (S.D.N.Y. Sept. 28. 2007) (ordering notice under 29 U.S.C. § 216(b) where only limited discovery had taken place); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007) ("The court is not obliged to wait for the conclusion of discovery before it certifies the collective action and authorizes notice."); *Patton v. Thomson Corp.*, 264 F. Supp. 2d 263, 267-68 (E.D.N.Y. 2005) (ordering notice before full discovery in order to

"facilitate[] the [FLSA]'s broad remedial purpose. . . promot[e] efficient case management . . [and] preserve and effectuate the rights of potential plaintiffs whose claims might otherwise become time-barred during the discovery phase of the case") (internal citations omitted); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997) (ruling that the Court need not "wait for defendant to complete its discovery before authorizing class notice. To the contrary, courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management"). In lieu of discovery, courts rely upon allegations in a complaint and employee declarations to determine whether plaintiffs and potential opt-in collective members are similarly situated. *See e.g.*, *Gjurovich v. Emmanuel's Marketplace*, 282 F. Supp. 2d 91, 104 (S.D.N.Y. 2003).

**B. The Court Should Certify the Collective Action and Order Notice**

**i. The Standard**

"Courts generally determine the appropriateness of class certification at two stages: first, on the initial motion for conditional class certification, and second, after discovery." *Fasanelli, supra*, 516 F. Supp. 2d at 321. At the first stage, "courts utilize a lenient evidentiary standard in assessing whether the plaintiffs have presented sufficient evidence to demonstrate that a prospective class of member plaintiffs is similarly situated to the named Plaintiff." *Anglada v. Linens n' Things, Inc.*, 06 cv 12901, 2007 WL 1552511, 2007 U.S. Dist. LEXIS 39105, *11 (S.D.N.Y. Apr. 26, 2007); *Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007). To authorize notice, the Court needs to make an initial determination that plaintiffs and other non-exempt employees "may be" similarly situated. *Myers v. Hertz Corp.*, 624 F.3d. 537, 554-55 (2d Cir. 2010). Under this lenient standard, a court will certify a class as a collective action and order notice to potential collective members where "the plaintiff satisfies the minimal burden of showing that the similarly situated requirement is met" based on the pleadings and

declarations. *Iglesias- Mendoza, supra*, 239 F.R.D. at 367 (internal quotation omitted). Upon certification, "[p]otential class members are then notified and provided with the opportunity to opt into the action." *Id*.

To prevail on a motion for conditional certification, plaintiffs need only make a "modest factual showing" that they "are similarly situated *with respect to their allegations that the law has been violated*." *Hallissey v. Amer. Online, Inc.*, 2008 WL 465112, 99 cv 3785, 2008 U.S. Dist. LEXIS 18387, *6 (S.D.N.Y. Feb. 19, 2008) (internal quotation omitted) (emphasis in original). The plaintiffs' burden at this first stage is "very low." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y, 2007). Plaintiffs must demonstrate that there is a "factual nexus between the [named plaintiff's] situation and the situation of other current and former [employees]." *Toure*, 2007 U.S. Dist. LEXIS 74056, at *6 (internal quotation omitted, alterations in original); *see also Mentor, supra*, 246 F.R.D. at 181; *Fasanelli, supra*, 516 F. Supp. 2d at 321. Plaintiffs have met their burden where putative collective members "together were victims of a common policy or plan that violated the law [.]" *Lee v. ABC Carper & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) (internal quotation omitted), such as when they are all "employees of the same restaurant enterprise and allege the same types of FLSA violations." *Fasanelli., supra*, 516 F. Supp. 2d at 322; *see also Toure, supra*, 2007 U.S. Dist., LEXIS 74056, at *6 (stating that a plaintiff need only make a "modest factual showing" of similarity to satisfy the "relatively lenient evidentiary standard"); *Cuzco, supra*, 477 F. Supp. 241 at 632-33 (plaintiff satisfied "minimal burden" by making "modest factual showing"'); *Iglesias-Mendoza, supra*, 239 F.R.D. at 367-68 ("[Plaintiffs can satisfy the 'similarly situated' requirement by making a modest factual showing… that they and potential plaintiffs together were victims of a common policy or plan that violated the law.") (*quoting Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)); *Mazur v. Olek Lejbzon & Co.*, 2005 WL 3240472, 05 cv 2194,

2005 U.S. Dist. LEXIS 30321, *15 (S.D.N.Y. Nov. 30, 2005) (plaintiffs face only a very limited burden); *Hoffmann, supra*, 982 F. Supp. at 261 ("The burden on plaintiffs is not a stringent one, and the Court need only reach a preliminary determination that potential plaintiffs are "similarly situated.").

Allegations in the pleadings and declarations are sufficient to make this modest factual showing. *See e.g., Khalil v. Original Homestead Rest., Inc.*, 2007 WL 7142139, 07 cv 0695, 2007 U.S. Dist. LEXIS 70372, *3 (S.D.N.Y. Aug. 9, 2007) (certifying collective action based upon complaint and one affidavit); *Zhao v. Benihana, Inc.*, 2001 WL 845000, 01 cv 1297, 2001 U.S. Dist. LEXIS 10676, *2 (S.D.N.Y. May 7, 2001) (certifying based upon one affidavit founded on plaintiff's "best knowledge").

Unlike a Rule 23 class action, a collective action requires no "showing of numerosity, typicality, commonality and representativeness… as a pre-requisite to approval." *Mazur, supra*, 2005 U.S. Dist. LEXIS 30321, at *12 (internal quotation omitted); *see also Masson v. Ecolab, Inc.*, 04 cv 4488, 2005 U.S. Dist. LEXIS 18022, *37 (S.D.N.Y. Aug. 17, 2005). The lenient standard for certification and notice is justified because "[t]he ultimate determination regarding the merits of the case, and whether the class is properly situated – which requires a more 'stringent' inquiry – is made later in the litigation process, after more thorough discovery." *Gjurovich, supra*, 282 F. Supp. 2d. at 105.

The standard, accordingly, is a lenient one, and "the court 'typically grants conditional certification.'" *Malloy v. Rickard Fleischman & Assoc. Inc.*, 2009 WL 1585979, 09 cv 322 (CM), 2009 U.S. Dist. LEXIS 51790, *5 (S.D.N.Y. June 3, 2009) (quoting *Torres v. Gristede's Operating Corp.*, 2006 U.S. Dist. LEXIS 74039, *37-38 (S.D.N.Y. Sept 28, 2006)).

**ii. The Merits of the Plaintiffs' Action are Immaterial to the Determination of Conditional Certification**

Although plaintiffs are confident that they will establish that defendants failed to properly compensate the Covered Employees under the FLSA, a discussion of the underlying merits is unnecessary and inappropriate at this time. "[T]he standard in this circuit is clear; the merits of plaintiffs' claim are not at issue in a motion for conditional certification." *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 354 (E.D.N.Y. 2008); *see also*, *Mentor, supra*, 246 F.R.D. at 181 (stating that "the merits of a plaintiffs claims need not be evaluated and discovery need not be completed to approve and disseminate a § 216(b) notice"); *Fasanelli, supra*, 516 F. Supp. 2d at 322 ("'To the extent' that Defendants' opposition relies on a detailed factual dispute about whether the Defendants maintained an 'illega1 off-the clock' policy, 'illegal tip retention' policy, or failed to pay the minimum wage, that inquiry is misplaced as those issues go to the merits of' the case."); *Toure, supra*, 2007 U.S. Dist. LEXIS 74056, at *6 (stating that at the conditional certification stage "the merits of a plaintiff's claims need not be evaluated"); *Lynch, supra*, 491 F. Supp. 2d at 368 ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (finding that "[t]he focus… is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are "similarly situated"); *Hoffmann, supra*, 982 F. Supp. at 262 ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine that, a definable group of 'similarly situated' plaintiffs can exist here."). Any merits-based argument "is an improper ground on which to base a denial of a motion to certify conditionally an FLSA collective action[.]" *Anglada, supra*, 2007 U.S. Dial. LEXIS 39105, at *20. Rather, the proper inquiry is merely "whether the putative class alleged by Plaintiff is similarly situated based on

the pleadings and any affidavits," *Fasaneili, supra*, 516 F. Supp. 2d at 321.

### iii. Plaintiffs have Exceeded the Modest Factual Showing Required for Conditional Certification

Here, plaintiffs have made far more than a modest factual showing that they and the Covered Employees are similarly situated in that they were subject to a common plan wherein defendants failed to properly pay minimum wage and overtime. *See* Exhibit "1"; plaintiffs' Affidavits. Plaintiffs' detailed allegations in the pleadings and show that all Covered Employees were subject to the same compensation scheme. *See e.g., Fernandez v. Sharp Mgmt. Corp.*, 2016 WL 5940918, 16 cv 0551 (JGK) (SN), 2016 U.S. Dist. LEXIS 141916, *9 (S.D.N.Y. Oct. 13, 2016) ("The Court stresses that it is not the number of affidavits which is at issue; a single affidavit providing some basis for an inference that a company-wide policy exists could be sufficient to grant conditional certification"); *Juarez v. 449 Rest., Inc.*, 29 F.Supp. 3d 363, 369 (S.D.N.Y. 2014) ("In assessing the adequacy of a plaintiff's showing, district courts look to pleadings, affidavits, and declarations, but often authorize notice based solely on the personal observations of one plaintiff's affidavit."); *Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 374 (E.D.N.Y. 2008) (finding that plaintiff's "well-pleaded allegations," and nothing more, were sufficient to justify mailing notice to potential collective action members). There is no requirement within this Circuit that a certain number of employees opt-in before a court can conditionally certify a collective. *Enriquez v. Cherry Hill Mkt. Corp.*, 2012 WL 440691, No. 10 cv 5616 (FB) (ALC), 2012 U.S. Dist. LEXIS 17036, *4 (E.D.N.Y. Feb. 10, 2012) (citing *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009)).

As is relevant here, plaintiffs have declared that they, and other sign installers – many of whom they identify by name – performed similar job duties; were deemed "independent contractors" despite being employees; were subject to the same compensation practices; worked

over forty hours per week; were not properly paid their wages; and were not reimbursed for their fuel and vehicle maintenance expenses. These facts are more than sufficient for conditional certification purposes because they show defendants' common policy and practice of depriving employees of their lawfully earned wages for all hours worked. Thus, given the pleadings and plaintiffs' declarations, plaintiffs have more than satisfied their "very low" burden of demonstrating that the proposed collective is sufficiently similarly situated to justify issuing notice. As such, plaintiffs' motion for conditional certification of the FLSA collective must be granted.

**C. The Court Should Certify a Six Year Notice Period**

A six-year notice period harmonizes with the practice of many district courts within this Circuit of permitting plaintiffs to send notice dating back six years before the filing of the complaint, when, as here, the complaint alleges violations of the NYLL in addition to violations of the FLSA. *Fonseca v. Dircksen & Talleyrand, Inc.*, 2014 WL 1487279, 13 cv 5124 (AT), 2014 U.S. Dist. LEXIS 52744, *18 (S.D.N.Y. Apr. 10, 2014) ("When a plaintiff's complaint also includes NYLL claims, courts in this District routinely deny requests to limit the Notice time period to three years, as even where claims are untimely under FLSA, they may shed light on the appropriateness of certifying a class action under the NYLL.") (citations and quotation marks omitted); *Winfield v. Citibank*, 843 F.Supp. 2d 397, 410 (S.D.N.Y. 2012) (noting that "several courts in this Circuit have deemed it appropriate to grant six-year rather than three-year notice periods" where plaintiffs also assert NYLL claims) (collecting cases); *see also Lopes v. Heso, Inc.*, 2017 WL 4863084, 16 cv 6796 (MKB)(RML), 2017 U.S. Dist. LEXIS 178709, *15 (E.D.N.Y. Oct. 27, 2017) (*"*Based on my review of the case law on this issue, I find no jurisdictional or legal barriers to authorizing a six-year notice period."); *Avila v. Northport Car Wash, Inc.*, 774 F. Supp. 2d 450, 455 (E.D.N.Y. 2011) ("I find it appropriate and in the interest

of judicial economy in this case to allow the plaintiffs to obtain the relevant contact information going back for a six-year period "even if some recipients of the notice will have claims that are time-barred under the FLSA.") (citations and quotation marks omitted).

Plaintiffs' original complaint in this case was filed on August 15, 2021. Thus, plaintiffs' proposed "look back" period includes any Covered Employees from August 15, 2015 to the present

Should the Court deny plaintiffs' request to send notices to similarly situated persons employed within six years from the filing of the complaint, plaintiffs alternatively proposes to send notice to similarly situated persons employed within three years of the filing of the complaint to the present. *See Chhab v. Darden Rests., Inc.*, 2013 U.S. Dist. LEXIS 135926, *47-48 (S.D.N.Y. Sep. 19, 2013) (quoting *Winfield, supra*, 843 F. Supp. 2d at 410 (S.D.N.Y. 2012).

**D. Discovery of Contact Information is Proper and Necessary Under the FLSA**

It is appropriate for courts in collective actions to order the discovery of names and contact information of potential collective members. *See e.g. Lee, supra*, 236 F.R.D. at 202; *Fasanelli, supra*, 516 F. Supp. 2d at 323-24; *Cuzco, supra*, 477 F Supp. 2d at 637; *Sherrill v. Sutherland Global Servs., Inc.*, 487 F. Supp. 2d 344, 350 (W.D.N.Y. 2007); *Patton, supra*, 364 F. Supp. 2d at 268. "Courts within this Circuit routinely grant plaintiffs' motion to compel production of the names and addresses of potentially similarly situated employees who may wish to 'opt-in' to a collective action." *Anglada, supra*, 2007 U.S. Dist. LEXIS 39105, at *22.

To the extent that notices are returned by the postal service as undeliverable, plaintiffs further seek the Social Security numbers of covered employees in order for plaintiffs' counsel to perform a skip traces. Generally, a large percentage of consent forms are typically returned as undeliverable, and the only way to locate these employees is to perform a search by Social Security number. To conserve the resources of the Court, plaintiffs' counsel has prepared a

confidentiality order based on a sample from the Federal Judicial Center. Exhibit "3." This order balances the collective members' privacy concerns with the remedial nature of the FLSA. Courts routinely order defendants to produce social security numbers after a confidentiality order has been So Ordered by the Court. *See e.g., Shajan v. Bartolo, Ltd.*, 10 cv 1385, 2010 U.S. Dist. LEXIS 54581 (S.D.N.Y. June 2, 2010) (ordering defendants to produce collective members' social security numbers following plaintiffs' execution of a confidentiality agreement); *Patton, supra*, 364 F. Supp. 2d at 268.

Plaintiffs therefore request that, in addition to entering an order granting conditional certification and approving plaintiffs' proposed notice, the Court order defendants to produce, within ten days of the order to be made herein, a list of all Covered Employees in Excel format who were employed by defendants at any point in the six years preceding the filing of the plaintiffs' original complaint with the following information: names, titles, compensation rates, last known mailing addresses, email addresses, all known telephone numbers, dates of employment, and, subject to the limitations previously described, the social security numbers.

**E. The Proposed Notice is Fair and Adequate**

Attached as Exhibits "4" and "5" are, respectively, plaintiffs' proposed notice of pendency and proposed consent to joinder. The proposed notice provides clear instructions on how to opt-in and accurately states the prohibition against retaliation or discrimination for participation in a FLSA action. The Supreme Court specifically left the "content details of a proposed notice under §216(b)… to the broad discretion of the court." *Lee v. ABC Carpet & Home*, 00 cv 0984, 2008 U.S. Dist. LEXIS 38725, *3-4 (S.D.N.Y. May 9, 2008) (internal citations and quotations omitted). "When exercising its broad discretion to craft appropriate notices in individual cases, District Courts consider the overarching policies of the collective suit provisions" and ensure that putative plaintiffs receive "accurate and timely notice concerning the

pendency of the collective action, so that they can make informed decisions about whether to participate." *Fasanelli, supra*, 516 F. Supp. 2d at 323.

The proposed notice provides for a sixty-day opt-in period. Courts in the Second Circuit have held that a sixty-day period is "common practice." *See e.g. Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 61 (E.D.N.Y. 2011); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F.Supp. 2d 445 (S.D.N.Y. 2011). The proposed notice achieves the goal of providing potential opt-ins with accurate and timely notice concerning the pendency of the collective action and should be adopted.

**F. Notice Should be Disseminated Via U.S. Mail, E-Mail, and Text Message**

Plaintiffs request permission to issue the Notice to prospective members of the collective through mail, e-mail, and text message with a link to the notice on plaintiffs' counsel's website. Courts in this Circuit routinely approve distribution of notice via U.S Mail, email and text message. *See Martin v. Sprint/United Mgmt. Co.*, 15 cv 5237(PAE), 2016 WL 30334, 2016 U.S. Dist. LEXIS 352, *57 (S.D.N.Y. Jan. 4, 2016) (approving distribution of notice via mail and email); *Vasto v. Credico (USA) LLC*, 15 cv 9298 (PAE), 2016 WL 26581725, 2016 U.S. Dist. LEXIS 60158, *50 (S.D.N.Y. May 5, 2016) (granting plaintiffs' "request for permission to distribute the notice via email and text message"); *Pippins v. KPMG LLP*, 11 cv 377 (CM) (JLC), 2012 WL 19379, 2012 U.S. Dist. LEXIS 949, *41 (S.D.N.Y. January 3, 2012) ("[G]iven the reality of communications today… the provision of email addresses and email notice in addition to notice by first class mail is entirely appropriate."); *Lujan v. Cabana Mgmt., Inc.*, 10 cv 755 (ILG), 2011 U.S. Dist. LEXIS 82204, *9, n.3 (E.D.N.Y. July 27, 2011) ("[T]he Court sees email as a relatively unobtrusive option, one that affords the recipient time to reflect before deciding whether to respond."). A proposed body of an email, which will contain the FLSA collective action notice as an email attachment, is attached as Exhibit "6." A proposed text

message is attached as Exhibit "7."

**G. The Court Should Require Defendants to Post Notice**

Plaintiffs further request that defendants post notice, along with the consent forms, in a conspicuous location at defendants' warehouse, during regular business hours throughout the requested 60 day opt-in period. Posting a notice of the claim is proper in instances such as this where potential opt-in plaintiffs are numerous and likely will be able to find this information in an open and easy to find space within the work location. *Sherrill, supra,* 487 F. Supp. 2d at 351 ("Sutherland is hereby required to post continuous notice of this action and opt- in forms in a conspicuous location in each of its call centers during the ninety-day opt-in period referenced below."); *Rosario v. Valentine Avenue Discount Store, Co., Inc.*, 828 F. Supp. 2d 508, 521 (E.D.N.Y. 2011) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail."); *Harhash v. Infinity West Shoes, Inc.*, No. 10 cv 8285, 2011 WL 4001072, 2011 U.S. Dist. LEXIS 96880 (S.D.N.Y. Aug. 25, 2011) ("Courts in this District routinely order that Notice be posted in common areas or employee bulletin boards, even when notice is also provided via first-class mail."); *Whitehorn, supra*, 767 F. Supp. 2d at 451 (same). Such notices have been required to be posted at multiple work locations within a state. *See e.g. Whitehorn, id*, 767 F. Supp. 2d at 449 (requiring posting at several in-state locations); *Soler v. G & U, Inc.*, 86 F.R.D. 524, 531-32 (S.D.N.Y. 1980) (authorizing posting at multiple in-state migrant labor camps). Such notice has also been required at workplaces that are not strictly in the control of defendants. *See Malloy, supra*, 2009 WL 1585979, 2009 U.S. Dist. LEXIS 51790 (requiring notice posting to employees who worked in various locations 'embedded' at defendant's clients' facilities).

Here, conspicuously posting Notice and consent forms on employee bulletin boards and in other common areas will effectively inform employees about the collective action claims. If

the Notice is posted conspicuously, the goal of ensuring that all *current employees* are aware of the lawsuit could be achieved. Posting the Notice will help rectify any difficulties reaching potential collective action members through sending the Notice. Moreover, plaintiffs request that defense counsel file an affirmation, upon personal knowledge, with the Court stating that the defendants have properly complied with this aspect of the Court's order. Such affirmation should be filed on the Court's docket within fourteen days of the order requiring posting of the notice. Plaintiffs alternatively request an Order allowing plaintiffs' counsel, Brian L. Greben, or their designee to do unannounced "spot checks" on each of the locations at any point throughout the opt-in period. Neither of these steps is overly onerous nor will they disrupt the defendants' business in any way. Further, it will ensure that defendants comply with this aspect of the Court's order.

**H. The Court Should Authorize a Reminder Notice**

The Court should also authorize plaintiffs' Counsel to send a reminder notice mid-way through the notice period. Attached hereto as Exhibit "8" is the proposed reminder notice to be sent via U.S Mail; Attached as Exhibit "9" is proposed reminder notice to be sent via email; Lastly, attached as Exhibit "10" is a proposed reminder notice to be sent via text message. Courts regularly authorize reminder notices in order to ensure that workers do not disregard the impending deadline and increase the odds that workers will be informed of their rights. *See Puglisi v.TD bank, N.A.*, 998 F.Supp 2d. 95, 101-02 (E.D.N.Y. 2014) (approving reminder); *Chhab, supra.*, 2013 U.S. Dist. LEXIS 135926 (same); *Morris v. Lettire Constr., Corp.*, 896 F. Supp. 2d 265, 275 (S.D.N.Y. 2012) ("Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible . . . a reminder notice is appropriate.").

## I. Equitable Tolling

Should the Court grant the instant motion, plaintiffs respectfully request that, to avoid inequitable circumstances, the FLSA statute of limitations should be tolled until such time that they are able to send notice to potential opt-in plaintiffs. District Courts in this and other Circuits have granted requests for equitable tolling to avoid the prejudice to actual or potential opt-in plaintiffs that can arise from the unique procedural posture of such cases. *See e.g. Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170-71 (S.D.N.Y. 2014) (tolling the statute of limitations as of the date of the filing of the plaintiff's motion); *Kemper v. Westbury Operating Corp.*, 12 cv 895, 2012 WL 4976122, 2012 U.S. Dist. LEXIS 149682 (E.D.N.Y Oct. 17, 2012). Indeed, Courts have specifically acknowledged that "the delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine." *Yahares v. Rest. Assocs. Events Corp.*, 10 cv 935, 2011 U.S. Dist. LEXIS 23115, *4 (E.D.N.Y. Mar. 8, 2011).

## CONCLUSION

For the reasons set forth above, plaintiffs respectfully request that the Court Order:

1. Conditional certification of this action as a representative collective action pursuant to the FLSA, 29 U.S.C. §216 (b), on behalf of all Covered Employees employed by defendants within the last six years;

2. Court-facilitated notice of this FLSA action to Covered Employees, including consent form (opt-in form) as authorized by the FLSA;

3. Approval of the proposed FLSA notice of this action and the consent form;

4. Approval of a sixty-day notice period;

5. Approval for Plaintiffs' Counsel to send a Court Approved reminder notice

halfway through the opt-in period;

6. Approval of the proposed FLSA reminder notice;

7. Permission to send the notice via U.S Mail, e- Mail, and text message;

8. Production in Excel format of the names, titles, compensation rates, last known mailing addresses, email addresses, all known telephone numbers, dates of employment, and social security numbers;

9. Posting of the Notice, along with the consent form, by plaintiffs' counsel at any time in a conspicuous public location at the defendants' warehouse where Covered Employees are employed during regular business hours;

10. Equitable tolling of the statute of limitations until such time that plaintiffs' counsel is able to send notice to potential opt-in plaintiffs;

11. Such other and further relief, as this Court may deem appropriate.

Dated: Great Neck, New York
September 26, 2022

LAW OFFICE OF BRIAN L. GREBEN

/s/ Brian L. Greben

Brian L. Greben
316 Great Neck Road
Great Neck, NY 11021
(516) 304-5357
brian@grebenlegal.com