JAMES O. DRUKER*
SCOTT M. DRUKER

COUNSEL
HONORABLE JOHN L. KASE (Ret.)
PAULA SCHWARTZ FROME
ALAN G. KRAUT

* (MEMBER N.Y., MASS. & FLA BAR)
jim@kaseanddrukerlaw.com
scott@kaseanddrukerlaw.com

Kase & Druker
Counsellors at Law
1325 Franklin Avenue
Suite 225
Garden City, N.Y. 11530

(516) 746-4300
FAX NO. (516) 742-9415

WESTCHESTER OFFICE
136 PALMER AVENUE
MAMARONECK, N.Y. 10543
(914) 834-4600

SARASOTA OFFICE
JAMES O. DRUKER
408 GULF OF MEXICO DRIVE
LONGBOAT KEY, FLORIDA 34228
(941) 383-3500

December 5, 2022

***Filed via ECF***

Honorable Lee G. Dunst
United States Magistrate Judge
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

Re: Rafter, et al v. Everlast Sign & Service, et al
Case No. 21 CV 4588 (ARR)(LGD)

Dear Magistrate Judge Dunst:

As counsel for all defendants in the above-referenced case, I am writing in response to Your Honor's Order dated 11/30/2022 requesting an update on our current position regarding plaintiff's pending certification motion. At the outset, I would like to point out that, due to an illness of plaintiff's attorney, depositions were not completed until November 29, 2022. We stand by our request to deny the relief sought by plaintiffs "at this time."

Background

The defendant business ("Everlast") is a small family-owned company that specializes in the installation and removal of signs for real estate rentals and sales. The three named plaintiffs, as well as the others whom plaintiffs seek to include in their collective action, were all sign installers/drivers who performed services for Everlast. Each was required to sign an independent contractor agreement. All agreed to provide their own vehicles and their own tools, and to receive no benefits from Everlast. In addition, all agreed that, as independent contractors, they would pay for the fuel, maintenance and repairs required for their vehicles, as well as assuming responsibility for their taxes. Most, if not all, filed Schedules C with their tax returns declaring themselves, under penalties of perjury, to be sole proprietors and availing themselves of the tax benefits of deducting all of their business expenses.

Significantly, all of their installation work was performed far from the premises of Everlast, and was completely unsupervised. The uncontroverted evidence reveals that, other than being aware of the plaintiffs' arrival at the warehouse each morning to pick up and drop off signs, Everlast had absolutely no means by which to keep track of the hours that plaintiffs worked. The testimony from plaintiffs as well as defendants established that the plaintiffs worked by themselves and were free to take breaks for meals, restroom stops, naps or any other purpose.

We are cognizant of the fact that the Fair Labor Standards Act ("FSLA") ordinarily requires employers to keep track of the workers' hours. On the other hand, the doctrine of "impossibility" should control here in that the only parties who could keep track of their hours were the installers. Indeed, one plaintiff (Frank Rafter) testified that he went home for several hours every day, where he claims to have spent 3 hours making telephone calls and plotting his route for the following day.

In the unlikely event that the Court determines the workers to have been employees rather than independent contractors, Everlast is prepared to prove that the overtime hours claimed by the plaintiffs are utterly specious. Documentary evidence adduced by plaintiffs confirms the ample testimony that the warehouse did not open until 6:30 a.m. and that the installers were not supposed to show up prior to that time. The evidence established that the installers generally completed their routes somewhere between 1:30 to 2:30 p.m. Thus, their work was completed over the course of a 7 to 8 hour day. In many instances, they did not work 5 day weeks, rendering their claims of 50 and 60 hour workweeks completely implausible.

By way of example of the nature of plaintiffs' claims, plaintiff Frank Rafter claims compensation for purportedly arriving at the warehouse at 5:00 a.m. each morning (1½ hours prior to opening). Mr. Rafter also absurdly claims to have spent 2 hours each day planning his route for the following day, whereas his co-plaintiffs and the defendant installers all stated that the time required was between 10 to 30 minutes. His claim was characterized by other installers as "ludicrous" and "non-feasible." Rafter also uniquely claims to have spent an hour to an hour and a half each day on the telephone with real estate brokers, a contention that was disproven by the testimony not only of defendants, but of his fellow plaintiffs.

In short, defendants believe that they will ultimately prevail on the issue of the hours claimed by the plaintiffs to have worked.

This litigation, even with only 3 plaintiffs, has been expensive and will continue to be expensive for this small business and for the 5 individual defendants, only 2 of whom are owners who have any right to control the compensation of the plaintiffs. One of the remaining defendants is a secretary/office manager; another is a former installer who was promoted to "warehouse manager" and who has no control whatsoever over the activities or compensation of the plaintiffs; a third defendant is an installer who renders exactly the same services as those of the plaintiff and who also has no control over the activities or compensation of the plaintiffs. It is extremely likely that 1, 2 or 3 of these defendants will be dismissed from this lawsuit when the summary judgment motions are determined. To require them to have to bear the additional expense of

defending against a collective action that will entail substantial additional discovery as well as more depositions creates an undue and harsh financial burden.

Finally, in all likelihood, the FLSA's two year statute of limitations for *non-wilful conduct* will likely be deemed applicable in this case. The two owner-defendants, Anne and Alexa Tiefenworth, are the widow and daughter of the late Michael Tiefenworth who founded Everlast several decades ago, and who ran the company until his death in late 2018, at which time Anne and Alexa inherited the company with which they had no previous affiliation. Anne became a completely passive owner. Alexa followed her late father's schedule that set the agreed upon compensation for the three plaintiffs and their fellow installers. Both Anne and Alexa were aware of a favorable decision by the New York State Unemployment Insurance Appeal Board in 2019, holding that Everlast's installers were independent contractors - not employees. As such, they are not entitled to unemployment compensation if Everlast terminates their service. Certainly, these facts lead to the inescapable conclusion that Defendants' conduct was non-wilful, thereby triggering the two year statute of limitations. This would eliminate three quarters of the putative class action plaintiffs from being able to sue, since most stopped working for Everlast prior to 2019.

In summary, there are numerous valid reasons to refrain from granting plaintiffs' motion until everything is sorted out via summary judgment motions.

Respectfully submitted,

James O. Druker

JOD:md